UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DELAINE LAMBERT,

      Plaintiff,

                                  Case No. 1:25-cv-403

v.

                                  Hon. Hala Y. Jarbou

BATTLE CREEK POLICE
DEPARTMENT, et al.,

      Defendants.

_____/

### OPINION

Before the Court is the motion by the Battle Creek Police Department (BCPD) and several BCPD officers—Jennifer Elsaidi, Carl VanDyke, Christof Klein, and James Bailey—to dismiss Delaine Lambert's excessive-force lawsuit against them.  (Mot. to Dismiss, ECF No. 21.)  In a prior order, the Court gave the parties notice that it intended to treat Defendants' motion as one for summary judgment in order to fully consider the evidence the parties have put into the record, particularly the BCPD officers' body-camera footage.  The Court's assessment of that evidence leads it to the conclusion that Lambert has failed to point to a genuine dispute of material fact over whether the officers' use of a police canine to subdue him was unconstitutionally excessive. Consequently, the Court will grant Defendants' motion and dismiss this action.

### I.    BACKGROUND

Lambert's claim arises from his apprehension by police canine on November 4, 2022, while police were attempting to arrest Lambert for assaulting his father and making his way into his home. (Mot. 4.)  Defendants were made aware of Lambert's attack on his father when he presented himself at BCPD headquarters with a bruised and bloodied face.  (Mot. to Dismiss Ex. 1, at 00:08–

00:44.)  They learned from Lambert's father that Lambert was probably still at his father's home (*id.* at 00:41, 02:49–02:55), and that the father left the door to his house open so the police could expel Lambert (*id.* at 06:35).  After sending the father off for medical attention, Defendants went to his home to confront Lambert (Mot. to Dismiss Ex. 6, at 00:01–00:36).  When the officers arrived at Lambert's father's home, they ordered Lambert to come out and talk to them.  (*Id.* at 01:48.)  When Lambert failed to comply, the officers warned that they would send a police canine into the home to find Lambert and subdue him.  (Mot. to Dismiss Ex. 3, at 05:58, 06:34, 07:17.)  The warning was repeated two more times while Skube, the police dog, searched the house for Lambert.  (*Id.* at 10:08, 10:55.)  The officers found Lambert hiding in a closet on the second floor.  The police surrounded the closet door, then opened it.  (*Id.* at 12:58.)  Lambert edged out of the closet but failed to comply with the police's directives to drop to the floor, so Officer Bailey (Skube's handler) directed Skube to apprehend Lambert.  (*Id.* at 13:01.)  Skube jumped onto Lambert and bit him, then lost his hold.  (*Id.* at 13:04.)  He latched onto Lambert's arm with his second and third bites, dragging Lambert down.  (*Id.* at 13:07, 13:10; Mot. to Dismiss Ex. 2, at 12:57.)  Bailey then drew Skube back, and the other officers pushed Lambert to the ground.  Skube was in contact with Lambert's body for no longer than nine seconds.  (Mot. Ex. 2, at 13:01–13:10.)  Lambert was then arrested.

In April 2025, Lambert—now serving a sentence in a state prison—filed the instant action.  (Compl., ECF No. 1, PageID.14.)  In August, Defendants moved to dismiss all claims against them, relying on the officers' body-camera footage to refute Lambert's allegations.  (Mot. 18.)  Lambert obtained multiple extensions of the deadline for filing his opposition brief, which was finally submitted to the Court in December.  (Resp., ECF No. 33.)  After the Court converted Defendants' motion to dismiss to one for summary judgment (ECF No. 32), Defendants filed their

supplemental brief along with additional body-camera footage of the circumstances surrounding Lambert's arrest (Defs.' Suppl. Br., ECF No. 35).  Lambert in turn filed an affidavit under Federal Rule of Procedure 56(d) requesting discovery (ECF No. 37), as well as additional documents reiterating the contentions advanced in his complaint and his initial opposition brief (ECF Nos. 38, 39).  Defendants' summary-judgment motion is now ripe for adjudication.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If the movant does not bear the burden of persuasion at trial, the necessary showing can be made by "submitting affirmative evidence that negates an essential element of the nonmoving party's claim," *Kava v. Peters*, 450 F. App'x 470, 473 (6th Cir. 2011) (cleaned up), or by "pointing out the lack of evidence to support an essential element" of that claim, *Rockwood Auto Parts, Inc. v. Monroe County*, 155 F.4th 557, 566 (6th Cir. 2025) (cleaned up).  The nonmovant must then present "sufficient evidence from which a jury could reasonably find in its favor."  *Davis v. Sig Sauer, Inc.*, 126 F.4th 1213, 1230 (6th Cir. 2025) (cleaned up).  Summary judgment is not an opportunity for the Court to resolve factual disputes.  *Id*.  The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor."  *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021).

## III.    ANALYSIS

### A.    Rule 56(d) Affidavit

To begin, the Court notes that Lambert was given an opportunity to seek out any evidence necessary for him to resist Defendants' motion by lodging an affidavit under Rule 56(d).  Lambert duly filed a document that, at least in part, indicates he should be afforded discovery of medical records that according to him establish that he was bit three times, not twice as Defendants contend,

as well as photographs, body-camera footage, and medical records from a run-in Lambert had with the Battle Creek police department on August 15, 2022, during which Lambert claims he was also subjected to excessive force by the police.  (ECF No. 37.)

"A party invoking the protections of Rule 56(d) must do so in good faith by affirmatively demonstrating how postponement of a ruling on the motion will enable him to rebut the movant's showing of the absence of a genuine issue of fact." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623 (6th Cir. 2014).  "A district court does not abuse its discretion in denying discovery when the discovery requested would be irrelevant to the underlying issue to be decided." *In re Bayer Healthcare & Merial Ltd. Flea Control Litig.*, 752 F.3d 1065, 1074 (6th Cir. 2014) (quoting *United States v. Dairy Farmers of Am.*, 426 F.3d 850, 862 (6th Cir. 2005)); *see Turner v. Berghuis*, No. 1:15-cv-585, 2018 WL 1374032, at *3 (W.D. Mich. Mar. 19, 2018) (collecting cases).

Lambert has not shown how any of the materials he seeks would enable him to establish that any of the facts material to his claim are in genuine dispute.  The documentation pertaining to his August 15 arrest is plainly irrelevant; Lambert's refrain that the alleged brutality to which he was subjected explains why he hid in the closet when the police arrived at his father's house (*see* ECF No. 38, PageID.286) has no bearing on whether the police used excessive force in subduing him once they found him.  As for the documents pertaining to the instant case, obtaining them would not help Lambert either.  Even if it is assumed that Lambert was bit by Skube three times— the key point Lambert contends the medical records and photos he seeks would substantiate, and one that is already attested to by the record (ECF No. 20-1, PageID.143)—the Court concludes that there is no genuine dispute over whether the force Defendants used to subdue Lambert was excessive.

### B.    Excessive Force

The gravamen of Lambert's complaint is that deploying a police dog to subdue him amounted to excessive force.  (Compl., PageID.7–8.)  "Claims that police officers used excessive force in the course of an arrest are analyzed under the Fourth Amendment and the 'objective reasonableness' standard."  *Campbell v. City of Springboro*, 700 F.3d 779, 786–87 (6th Cir. 2012) (quoting *Bennett v. Krakowski*, 671 F.3d 553, 561 (6th Cir. 2011)).[1]  Chief among the factors that determine whether a use of force was reasonable are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether she is actively resisting arrest or attempting to evade arrest by flight."  *Rainey v. Patton*, 534 F. App'x 391, 395 (6th Cir. 2013) (cleaned up).  Evaluation of these factors is undertaken "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Baxter v. Bracey*, 751 F. App'x 869, 872 (6th Cir. 2018) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Circuit precedent "demarcate[s] the outer bounds of excessive-force cases involving canine seizures with some degree of clarity."  *Id.*  At one extreme lies the apprehension of stationary suspects using an untrained police dog without warning, *see Campbell*, 700 F.3d at 789; at the other, deploying a trained police dog to prevent a suspect in a dark and unfamiliar location from fleeing, *see Robinette v. Barnes*, 854 F.2d 909, 913–14 (6th Cir. 1988).  Although the criteria for evaluating cases between these extremes are "much hazier," *Burgess v. Bowers*, 773 F. App'x 238,

---

[1] Lambert characterizes his claim as arising under the Eighth Amendment and the Fourteenth Amendment's Due Process Clause.  Defendants therefore move for dismissal of Lambert's "Eighth Amendment claim."  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) targets the factual allegations comprising a claim for relief, not the legal theory that the plaintiff says corresponds to their allegations.  Identifying the correct framework for assessing Lambert's claim of its own force disposes of his Eighth Amendment theory.  *See Colonial Refrigerated Transp., Inc. v. Worsham*, 705 F.2d 821, 825 (6th Cir. 1983); *cf. Stark v. Mars, Inc.*, 790 F. Supp. 2d 658, 664 (S.D. Ohio 2011) ("A plaintiff is not required to plead legal theories or cases . . . . Even the failure to correctly categorize the legal theory giving rise to a claim does not require dismissal if the complaint otherwise alleges facts upon which relief can be granted." (citation omitted)).

246 (6th Cir. 2019), orientation is supplied by the Sixth Circuit's observation that "most" of its "excessive-force precedents involving police dogs find no violation at all." *Ashford v. Raby*, 951 F.3d 798, 803 (6th Cir. 2020).

Lambert's apprehension by police canine was reasonable under the circumstances. To begin, all three *Graham* factors point toward that conclusion. *First*, Lambert was suspected of committing a serious assault against his father and of unlawfully invading his home. (Mot. Ex. 1, at 01:10.) This conduct clearly qualifies as severe criminality, which entitled Defendants to forcefully subdue Lambert to abate the threat he posed to public safety. As Defendants point out in their supplemental brief (Defs.' Suppl. Br. 3–4), Lambert submits no evidence that would undermine this conclusion.

*Second*, given the severity of the injuries Lambert inflicted on his father, the police were entitled to suspect that Lambert posed a threat to their safety. Defendants contend that they did not know if Lambert was armed when Bailey directed Skube to subdue Lambert. (Mot. 12.) Lambert responds by pointing to VanDyke's testimony at his trial that he knew he was unarmed, but VanDyke did not so testify: the officer expressly denied that he could see Lambert's hands when the closet door was opened, and he testified that one of Lambert's hands was "being pulled tight into" his "chest." (ECF No. 20-1, PageID.144.) Lambert also says that it would have been easy to determine that he was unarmed because the landing atop which he was arrested was well-lit. (ECF No. 38, PageID.290.) That assertion is unsustainable in the face of the officers' body-cam footage, which shows that the landing was dark and the closet from which Lambert emerged even darker. (Mot. Ex. 3, at 12:58–13:15; Mot. to Dismiss Ex. 6, at 12:25–12:54.)

*Third*, Lambert sought to evade arrest in the period leading up to his apprehension. When the officers arrived at Lambert's father's house, they asked him to surrender himself, but he did

6

not comply and hid inside. (Mot. Ex. 2, at 05:48.) They eventually tracked him to a closet on the second floor; the officers, along with the police dog, waited outside the closet for Lambert. (*Id.* at 12:20.) Although Lambert did not attempt to evade the officers when he exited the closet, he also did not immediately comply with their orders to come out of the closet and lay down on the ground. (*Id.* at 12:50.) That Lambert ignored orders to surrender himself for over ten minutes legitimately influenced the officers' decision to forcefully subdue him. *See Feagin v. Mansfield Police Dep't*, 155 F.4th 595, 611–12 (6th Cir. 2025).

The reasonableness of Lambert's seizure is bolstered by the absence of the contrary indicia identified in the police-dog cases, namely failure to warn before deploying a canine and using an untrained dog. *See Zuress v. City of Newark*, 815 F. App'x 1, 7 (6th Cir. 2020). Lambert presents no evidence that Skube was poorly trained. And although he contends that he was not warned before the canine bit him (ECF No. 38, PageID.295), his version of events is contradicted by unambiguous body camera footage indicating that he was given two warnings in the minutes leading up to his subdual by Skube (Mot. Ex. 2, at 05:48, 10:46).

Finally, *Puskas v. Delaware County*, 56 F.4th 1088 (6th Cir. 2023), forecloses Lambert's argument that subdual by canine was inherently unreasonable when less forceful options, such as the officers subduing using their own hands or by tasing him, were available. (Compl., PageID.7.) *Puskas* teaches that officers need not use "the best technique" for restraining a suspect "available as long as their method is reasonable under the circumstances." 56 F.4th at 1095 (quoting *Davenport v. Causey*, 521 F.3d 544, 552 (6th Cir. 2008)). Lambert's continued refusal to comply with police directives, when combined with the officers' uncertainty about whether Lambert was armed, render the officers' choice to apprehend Lambert via police canine rather than direct physical restraint or taser defensible.

## IV.    CONCLUSION

Lambert fails to establish a genuine dispute over the reasonableness of the force used to subdue him.    Lambert can point to no evidence that the officers who arrested him acted unreasonably in arresting him with the aid of a police dog, and his apprehension was not accompanied by circumstances deemed indicative of unreasonableness in the case law.  The Court will therefore grant Defendants' motion and dismiss this action.

An order and judgment consistent with this Opinion shall issue.

Dated: February 26, 2026              /s/ Hala Y. Jarbou
                                      HALA Y. JARBOU
                                      CHIEF UNITED STATES DISTRICT JUDGE